## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Lisa Kahane, 05 - CO101 CIV-MORENO

MAGISTRATE JUDGE
GARBER

Plaintiff,

v.                                    **COMPLAINT**

**UNUM LIFE INSURANCE COMPANY**

**OF AMERICA,**

Defendant.

_____/

### The Parties.

1.     Plaintiff.  Plaintiff, Lisa Kahane, ("Kahane") is a resident of Broward County,

Florida.

2.     Defendant.  Defendant, Unum Life Insurance Company of America ("UNUM") is a

life insurance company, incorporated in Maine and authorized to write life insurance in Florida.

### Jurisdiction and Venue

3.     Jurisdiction.  This action arises under a group long term disability policy (the

"Policy") issued by UNUM to Andrx Corporation (the "Employer") under which Kahane is

insured.  The Policy is an "employee welfare benefit plan" within the meaning of § 302(1) of the

Employee Retirement and Insurance Security Act ("ERISA"), 29 U.S.C.A. § 1002(1), and this

F ripps kahane\complaint-1.doc          - 1 -



action is brought under 29 § 502(a)(1)(B) of ERISA, U.S.C.A. § 1132(a)(1)(B).  This Court has jurisdiction under § 502(f) of ERISA, 29 U.S.C.A. § 1132(f).

4.    <u>Venue.</u>  UNUM, as a life insurance company authorized to do insurance business in Florida, is subject to personal jurisdiction in Florida.  The claims asserted in this action  arise from UNUM's breach of its contract to make payments to Kahane in Broward County. Therefore, venue is proper under 28 U.S.C.A. § 1391(b)(s)6(c)..

### **Factual Background**

5.    <u>Kahane's Employment and Disability.</u>  Kahane was employed by the Employer until May 18, 2002, (the "Disability Date") when she was forced to stop working because of her disability.

6.    <u>Kahane's Illness and Disability.</u>  Kahane suffered from Crohn's disease for many years prior to the Disability Date, but was able to continue working, except for brief periods when flare ups of the Crohn's Disease required her to be absent from work.  In the course of treatment for her Crohn's Disease, she was administered a drug, Remicade, on September 18 and October 2, 2001 to which she had a severe reaction causing serum sickness.  As a result, at all times and since May 18, 2001, she has been unable to work.

7.    <u>The Policy.</u>  Kahane is covered by the Policy, bearing No. 528740-001.  (A copy attached as Exhibit A).   The Policy  provides for disability payments to commence after an elimination period of  90 days and to continue until age 65  as long as the employee remains disabled, with certain time limitations as described below.

8.     UNUM's Determination of Kahane was disabled.  Following her disability, Kahane applied to UNUM for benefits under the Policy.

9.     UNUM'S Payment of Benefits and Alleged Time Limitation.  UNUM began paying benefits on August 17, 2001, while its claim investigation continued.  By letter dated March 27, 2002 (Exhibit B) UNUM determined Kahane was, in fact, disabled, but alleged a 24-month limitation which Kahane contends is inapplicable.

10.    Continuance of Benefit Payment for 7 Months After Alleged 24-Month Limitation. Although the 24-month period expired on August 15, 2003, UNUM continued benefit payments until March 15, 2004, when benefit payments ceased.

11.    UNUM's Denial and Demand For Partial Benefit Refund.  By letter dated March 31, 2004 (Exhibit C), UNUM advised Kahane that her disability "appear[s] to be based on your self reported symptoms and/or mental/nervous condition" and she was therefore entitled to only 24 months of benefits.  UNUM also demanded repayment of $1,906.67 in benefits paid from January 21, 2004 to March 15, 2004.

12.    Further Denial By UNUM.  In accordance with UNUM's internal procedures, Kahane appealed UNUM's cut-off of benefits  and  repayment demand  by letter dated April 7, 2004 (Exhibit D).  By letter dated June 24, 2004 (Exhibit E), UNUM rejected Kahane's appeal.

13.    UNUM's Failure To Continue Disability Payments.  Despite repeated requests, UNUM has failed to this date, to make any further disability payments to Kahane.

## COUNT I – BREACH OF CONTRACT

14.    Prior Allegations.  The allegations of paragraph 1 through 13 are repeated and realleged.

15. **Kahane's Disability.** Kahane has been continuously disabled, within the meaning of the Policy, since May 18, 2002.

16. **Kahane's Disability is Not Due to Mental Illness or Based Primarily on Self-Reported Symptoms.** Kahane's disability is not due to mental illness or a sickness based primarily on self-reported symptoms.

17. **Kahane's Entitlement to Benefits.** Kahane is entitled to receive the amounts due to her under the insurance contract.

## COUNT II – DECLARATORY JUDGMENT

18. **Prior Allegations.** The allegations of paragraphs 1-17 are repeated and realleged.

19. **UNUM's Demand for Payment.** UNUM has demanded that Kahane repay $1,906.67 of the benefits paid by UNUM to Kahane.

20. **Kahane Is Not Indebted to UNUM.** Kahane does not owe any money to UNUM.

## COUNT III – ATTORNEY'S FEES

20. **Prior Allegations.** The allegations of paragraphs 1-20 are repeated and realleged.

21. **Statutory Provision.** Section 1132(g)(1) of ERISA, 29 U.S.C.A § 1132(g)(1), provides:

> In any action under this subchapter . . . by a participant . . . the court in its discretion may allow a reasonable attorney's fees and costs of action to either party.

22.    <u>Attorney's Fees and Costs.</u>  Kahane has retained the undersigned to enforce her rights under ERISA, for which she is entitled to an award of attorney's fees and costs under Section 1132(g).

**WHEREFORE**, Kahane demands judgment against UNUM:

(a)  Awarding benefits accrued  under the Policy from March 16, 2004 to the date of judgment;

(b)  Directing UNUM to continue payments of monthly benefits under the Policy as long as Kahane remains disabled, up to the age of 65;

(c)  Determining that UNUM is not entitled to the $1,906.67 repayment demanded of Kahane;

(d)  Awarding attorneys fees and costs under 29 U.S.C.A. § 1132(g)(1);

(e)  Granting such other, further or different relief as may be just; and

(f)  Awarding Kahane interest as provided by law and the costs and disbursements of this action.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury on all issues so triable as to each of the Counts of this Complaint.

Dated:  January 19th, 2005

HARNETT LESNICK & RIPPS P.A.
Attorneys for Plaintiff
150 East Palmetto Park Road
Suite 500
Boca Raton, FL 33432

By: _____
Irving I. Lesnick
Fla. Bar No.:  346039

By: _____
Judith A. Ripps
Fla. Bar No.:  0831621

AMENDMENT NO. 2

This amendment forms a part of Group Policy No. 528740 001 issued to the Policyholder:

Andrx Corporation

The entire policy is replaced by the policy attached to this amendment.

The effective date of these changes is May 1, 2001.  The changes only apply to disabilities which start on or after the effective date.

The policy's terms and provisions will apply other than as stated in this amendment.

Dated at Portland, Maine on June 4, 2001.

Unum Life Insurance Company of America

By

Secretary

If this amendment is unacceptable, please sign below and return this amendment to Unum Life Insurance Company of America at Portland, Maine within 90 days of June 4, 2001.

**YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF THIS AMENDMENT.**

Andrx Corporation

By _____
Signature and Title of Officer

C.AMEND-1                    AMEND-1   (5/1/2001)

 **UNUM.**

**GROUP INSURANCE POLICY**
**NON-PARTICIPATING**

**POLICYHOLDER:**   Andrx Corporation

**POLICY NUMBER:**   528740 001

**POLICY EFFECTIVE DATE:**   August 1, 1998

**POLICY ANNIVERSARY DATE:** August 1

**GOVERNING JURISDICTION:**   Florida

**SUBJECT:**   Group Long Term Disability

Unum Life Insurance Company of America (referred to as Unum) will provide benefits under this policy.  Unum makes this promise subject to all of this policy's provisions.

The policyholder should read this policy carefully and contact Unum promptly with any questions.  This policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.  This policy consists of:

- all policy provisions and any amendments and/or attachments issued;
- employees' signed applications; and
- the certificate of coverage.

This policy may be changed in whole or in part.  Only an officer or a registrar of Unum can approve a change.  The approval must be in writing and endorsed on or attached to this policy.  No other person, including an agent, may change this policy or waive any part of it.

Signed for Unum at Portland, Maine on the Policy Effective Date.

President                                    Secretary

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

Copyright 1993, Unum Life Insurance Company of America

# TABLE OF CONTENTS

BENEFITS AT A GLANCE.................................................................................B@G-LTD-1

LONG TERM DISABILITY PLAN .....................................................................B@G-LTD-1

CLAIM INFORMATION.....................................................................................LTD-CLM-1

LONG TERM DISABILITY . ..............................................................................LTD-CLM-1

POLICYHOLDER PROVISIONS.......................................................................EMPLOYER-1

CERTIFICATE SECTION .................................................................................CC.FP-1

GENERAL PROVISIONS ..................................................................................EMPLOYEE-1

LONG TERM DISABILITY .................................................................................LTD-BEN-1

BENEFIT INFORMATION..................................................................................LTD-BEN-1

OTHER BENEFIT FEATURES .........................................................................LTD-OTR-1

STATE REQUIREMENTS .................................................................................STATE REQ-1

OTHER SERVICES ..........................................................................................SERVICES-1

ERISA ..............................................................................................................ERISA-1

GLOSSARY ......................................................................................................GLOSSARY-1

# BENEFITS AT A GLANCE

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you are disabled. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled.

**EMPLOYER'S ORIGINAL PLAN
EFFECTIVE DATE:**     August 1, 1998

**POLICY NUMBER:**     528740  001

**ELIGIBLE GROUP(S):**

> Group 1
> All Full-Time Employees Earning $50,000 or More in active employment

> Group 2
> All Other Employees in active employment

**MINIMUM HOURS REQUIREMENT:**

> Employees must be working at least 30 hours per week.

**WAITING PERIOD:**

> For employees in an eligible group on or before August 1, 1998:  None

> For employees entering an eligible group after August 1, 1998:  First of the month coincident with or next following 3 months of continuous active employment

**REHIRE:**

> If your employment ends and you are rehired within 12 months, your previous work while in an eligible group will apply toward the waiting period.  All other policy provisions apply.

**CREDIT PRIOR SERVICE:**

> Unum will apply any prior period of work with your Employer toward the waiting period to determine your eligibility date.

**WHO PAYS FOR THE COVERAGE:**

> Your Employer pays the cost of your coverage.

**ELIMINATION PERIOD:**

> 90 days

Benefits begin the day after the elimination period is completed.

**MONTHLY BENEFIT:**

> 60% of monthly earnings to a maximum benefit of $10,000 per month.

> Your payment may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may have limited coverage under this plan.

B@G-LTD-1   (5/1/2001)

**MAXIMUM PERIOD OF PAYMENT:**

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than age 60 | To age 65, but not less than 5 years |
| Age 60 | 60 months |
| Age 61 | 48 months |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

No premium payments are required for your coverage while you are receiving payments under this plan.

**OTHER FEATURES:**

Conversion

Disability Plus

Minimum Benefit

Pre-Existing: 3/12

Spouse Disability Benefit

Survivor Benefit

**The above items are only highlights of this plan.  For a full description of your coverage, continue reading your certificate of coverage section.**

B@G-LTD-2   (5/1/2001)

# CLAIM INFORMATION

# LONG TERM DISABILITY

## *WHEN DO YOU NOTIFY UNUM OF A CLAIM?*

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins or as soon as reasonably possible. However, you must send Unum written proof of your claim no later than 90 days after your elimination period. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Unum within 15 days of your request, send Unum written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

## *HOW DO YOU FILE A CLAIM?*

You and your Employer must fill out your own sections of the claim form and then give it to your attending physician. Your physician should fill out his or her section of the form and send it directly to Unum.

## *WHAT INFORMATION IS NEEDED AS PROOF OF YOUR CLAIM?*

Your proof of claim, provided at your expense, must show:

- that you are under the **regular care** of a **physician**;
- the appropriate documentation of your monthly earnings;
- the date your disability began;
- the cause of your disability;
- the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and
- the name and address of any **hospital or institution** where you received treatment, including all attending physicians.

We may request that you send proof of continuing disability indicating that you are under the regular care of a physician. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.

## *TO WHOM WILL UNUM MAKE PAYMENTS?*

Unum will make payments to you.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud;
- any error Unum makes in processing a claim; and
- your receipt of deductible sources of income.

You must reimburse us in full.  We will determine the method by which the repayment is to be made.

Unum will not recover more money than the amount we paid you.

LTD-CLM-2   (5/1/2001)

# PCLICYHOLDER PROVISIONS

*WHAT IS THE COST OF THIS INSURANCE?*

## LONG TERM DISABILITY

The initial premium for each plan is based on the initial rate(s) shown in the policy effective on the Employer's original plan effective date.

### WAIVER OF PREMIUM

Unum does not require premium payments for an insured while he or she is receiving Long Term Disability payments under this plan.

### INITIAL RATE GUARANTEE

Refer to the policy effective on the Employer's original plan effective date.

## WHEN IS PREMIUM DUE FOR THIS POLICY?

Premium Due Dates:  Premium due dates are based on the Premium Due Dates shown in the policy effective on the Employer's original plan effective date.

The **Policyholder** must send all premiums to Unum on or before their respective due date.  The premium must be paid in United States dollars.

## WHEN ARE INCREASES OR DECREASES IN PREMIUM DUE?

Premium increases or decreases which take effect during a policy month are adjusted and due on the next premium due date following the change.  Changes will not be pro-rated daily.

If premiums are paid on other than a monthly basis, premiums for increases and decreases will result in a monthly pro-rated adjustment on the next premium due date.

Unum will only adjust premium for the current policy year and the prior policy year. In the case of fraud, premium adjustments will be made for all policy years.

## WHAT INFORMATION DOES UNUM REQUIRE FROM THE POLICYHOLDER?

The Policyholder must provide Unum with the following on a regular basis:

- information about employees:
  - who are eligible to become insured;
  - whose amounts of coverage change; and/or
  - whose coverage ends;
- occupational information and any other information that may be required to manage a claim; and
- any other information that may be reasonably required.

Policyholder records that, in Unum's opinion, have a bearing on this policy will be available for review by Unum at any reasonable time.

EMPLOYER-1   (5/1/2001)

Clerical error or omission by Unum will not:

- prevent an employee from receiving coverage;
- affect the amount of an insured's coverage; or
- cause an employee's coverage to begin or continue when the coverage would not otherwise be effective.

## WHO CAN CANCEL THIS POLICY OR A PLAN UNDER THIS POLICY?

This policy or a plan under this policy can be cancelled:

- by Unum; or
- by the Policyholder.

Unum may cancel or offer to modify this policy or a plan if:

- there is less than 75% participation of those eligible employees who pay all or part of their premium for a plan; or
- there is less than 100% participation of those eligible employees for a Policyholder paid plan;
- the Policyholder does not promptly provide Unum with information that is reasonably required;
- the Policyholder fails to perform any of its obligations that relate to this policy;
- fewer than 10 employees are insured under a plan;
- the Policyholder fails to pay any premium within the 31 day **grace period**.

If Unum cancels this policy or a plan for reasons other than the Policyholder's failure to pay premium, a written notice will be delivered to the Policyholder at least 45 days prior to the cancellation date.

If the premium is not paid during the grace period, the policy or plan will terminate automatically at the end of the grace period. The Policyholder is liable for premium for coverage during the grace period. The Policyholder must pay Unum all premium due for the full period each plan is in force.

The Policyholder may cancel this policy or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Policyholder and Unum agree, this policy or a plan can be cancelled on an earlier date. If Unum or the Policyholder cancels this policy or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If this policy or a plan is cancelled, the cancellation will not affect a **payable claim**.

## WHAT HAPPENS TO AN EMPLOYEE'S COVERAGE UNDER THIS POLICY WHILE HE OR SHE IS ON A FAMILY AND MEDICAL LEAVE OF ABSENCE?

We will continue the employee's coverage in accordance with the policyholder's Human Resource policy on family and medical leaves of absence if premium payments continue and the policyholder approved the employee's leave in writing.

Coverage will be continued until the end of the later of:

1. the leave period required by the federal Family and Medical Leave of Absence Act of 1993 and any amendments; or
2. the leave period required by applicable state law.

If the policyholder's Human Resource policy doesn't provide for continuation of an employee's coverage during a family and medical leave of absence, the employee's coverage will be reinstated when he or she returns to active employment.

We will not:

- apply a new waiting period;
- apply a new pre-existing conditions exclusion; or
- require evidence of insurability.

### DIVISIONS, SUBSIDIARIES OR AFFILIATED COMPANIES INCLUDE:

NAME/LOCATION (CITY AND STATE)

None

EMPLOYER-3   (5/1/2001)

# CERTIFICATE SECTION

Unum Life Insurance Company of America (referred to as Unum) welcomes you as a client.

This is your certificate of coverage as long as you are eligible for coverage and you become insured.  You will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English.  However, a few terms and provisions are written as required by insurance law.  If you have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist you in any way to help you understand your benefits.

If the terms and provisions of the certificate of coverage (issued to you) are different from the policy (issued to the policyholder), the policy will govern.  Your coverage may be cancelled or changed in whole or in part under the terms and provisions of the policy.

The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.  When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

For purposes of effective dates and ending dates under the group policy, all days begin at 12:01 a.m. and end at 12:00 midnight at the Policyholder's address.

Unum Life Insurance Company of America<br>
2211 Congress Street<br>
Portland, Maine 04122

# GENERAL PROVISIONS

## *WHAT IS THE CERTIFICATE OF COVERAGE?*

This certificate of coverage is a written statement prepared by Unum and may include attachments. It tells you:

- the coverage for which you may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

Unum will provide your Employer with a certificate of coverage for delivery to each insured.

## *WHEN ARE YOU ELIGIBLE FOR COVERAGE?*

If you are working for your Employer in an eligible group, the date you are eligible for coverage is the later of:

- the plan effective date; or
- the day after you complete your **waiting period**.

## *WHEN DOES YOUR COVERAGE BEGIN?*

When your Employer pays 100% of the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage.

When you and your Employer share the cost of your coverage under a plan or when you pay 100% of the cost yourself, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;
- the date you apply for insurance, if you apply within 31 days after your eligibility date; or
- the date Unum approves your application, if **evidence of insurability** is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or
- voluntarily cancelled your coverage and are reapplying.

An evidence of insurability form can be obtained from your Employer.

## *WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?*

If you are absent from work due to injury, sickness, temporary layoff or leave of absence, your coverage will begin on the date you return to **active employment**.

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If you are on a temporary **layoff**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered through the end of the month that immediately follows the month in which your leave of absence begins.

### WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?

Once your coverage begins, any increased or additional coverage will take effect immediately if you are in active employment or if you are on a covered layoff or leave of absence.  If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### WHEN DOES YOUR COVERAGE END?

Your coverage under the policy or a plan ends on the earliest of:

- the date the policy or a plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

Unum will provide coverage for a payable claim which occurs while you are covered under the policy or plan.

### WHAT ARE THE TIME LIMITS FOR LEGAL PROCEEDINGS?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to the applicable statute of limitations from the time proof of claim is required, unless otherwise provided under federal law.

### HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?

Unum considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty.  If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or
- cancel your coverage from the original effective date.

We will use only statements made in a signed application as a basis for doing this. These statements cannot be used to reduce or deny coverage if your coverage has been in force for at least two years.

However, if the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and
- make a fair adjustment of the premium.

### HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

It is a crime if you knowingly, and with intent to injure, defraud or deceive Unum, or provide any information, including filing a claim, that contains any false, incomplete or misleading information. These actions, as well as submission of materially false information, will result in denial of your claim, and are subject to prosecution and punishment to the full extent under state and/or federal law. Unum will pursue all appropriate legal remedies in the event of insurance fraud.

### DOES THE POLICY REPLACE OR AFFECT ANY WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE?

The policy does not replace or affect the requirements for coverage by any workers' compensation or state disability insurance.

### DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For purposes of the policy, your Employer acts on its own behalf or as your agent. Under no circumstances will your Employer be deemed the agent of Unum.

# LONG TERM DISABILITY

# BENEFIT INFORMATION

## *HOW DOES UNUM DEFINE DISABILITY?*

### All Full-Time Employees Earning $50,000 or More
You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a physician, other medical practitioner or vocational expert of our choice.  Unum will pay for this examination.  We can require an examination as often as it is reasonable to do so.  We may also require you to be interviewed by an authorized Unum Representative.

### All Other Employees
You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a physician, other medical practitioner or vocational expert of our choice.  Unum will pay for this examination.  We can require an examination as often as it is reasonable to do so.  We may also require you to be interviewed by an authorized Unum Representative.

## *HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?*

You must be continuously disabled through your **elimination period.**  Unum will treat your disability as continuous if your disability stops for 30 days or less during the elimination period.  The days that you are not disabled will not count toward your elimination period.

Your elimination period is 90 days.

### CAN YOU SATISFY YOUR ELIMINATION PERIOD IF YOU ARE WORKING?

Yes, provided you meet the definition of disability.

### WHEN WILL YOU BEGIN TO RECEIVE PAYMENTS?

You will begin to receive payments when we receive proof and approve your claim, providing the elimination period has been met. We will send you a payment monthly for any period for which Unum is liable.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED?

We will follow this process to figure your payment:

1. Multiply your monthly earnings by 60%.
2. The maximum **monthly benefit** is $10,000.
3. Compare the answer from Item 1 with the maximum monthly benefit. The lesser of these two amounts is your **gross disability payment**.
4. Subtract from your gross disability payment any **deductible sources of income**.

The amount figured in Item 4 is your **monthly payment**.

### WHAT ARE YOUR MONTHLY EARNINGS?

**All Other Employees**
"Monthly Earnings" means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

**Sales Employees**
"Monthly Earnings" means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It inlcudes income actually received from your Draw just prior to your date of disability but does not include renewal commissions, bonuses, overtime pay or any other extra compensation, or income received from other sources other than your Employer.
Your Draw will be averaged for the lesser of:
a. the 12 full calendar month period of your employment with your Employer just prior to the date your disability begins, or
b. the period of actual employment with your Employer.

**Sales Employees**
"Monthly Earnings" means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan,

LTD-BEN-2   (5/1/2001)

or flexible spending account.  It includes income actually received from
your Draw just prior to your date of disability but does not include
renewal commissions, bonuses, overtime pay or any other extra compensation,
or income received from other sources other than your Employer.
Your Draw will be averaged for the lesser of:
a.  the 12 full calendar month period of your employment with your Employer
just prior to the date your disability begins, or
b.  the period of actual employment with your Employer.

### WHAT WILL WE USE FOR MONTHLY EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If you become disabled while you are on a covered layoff or leave of absence, we
will use your monthly earnings from your Employer in effect just prior to the date
your absence begins.

### HOW MUCH WILL UNUM PAY YOU IF YOU ARE DISABLED AND WORKING?

**All Full-Time Employees Earning $50,000 or More**
We will send you the monthly payment if you are disabled and your monthly
**disability earnings**, if any, are less than 20% of your indexed monthly earnings,
due to the same sickness or injury.

If you are disabled and your monthly disability earnings are from 20% through 80%
of your indexed monthly earnings, due to the same sickness or injury, Unum will
figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not
be reduced as long as disability earnings plus the gross disability payment does not
exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.
2. Compare the answer in Item 1 to your indexed monthly earnings.

If the answer from Item 1 is less than or equal to 100% of your indexed monthly
earnings, Unum will not further reduce your monthly payment.

If the answer from Item 1 is more than 100% of your indexed monthly earnings,
Unum will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the
percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.
2. Divide the answer in Item 1 by your indexed monthly earnings.  This is your
percentage of lost earnings.
3. Multiply your monthly payment by the answer in Item 2.

This is the amount Unum will pay you each month.

Unum may require you to send proof of your monthly disability earnings at least
quarterly.  We will adjust your payment based on your quarterly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records which we believe are necessary to substantiate your income.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30 of your payment for each day of disability.

**All Other Employees**
We will send you the monthly payment if you are disabled and your monthly **disability earnings**, if any, are less than 20% of your indexed monthly earnings, due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Unum will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.
2. Compare the answer in Item 1 to your indexed monthly earnings.

If the answer from Item 1 is less than or equal to 100% of your indexed monthly earnings, Unum will not further reduce your monthly payment.

If the answer from Item 1 is more than 100% of your indexed monthly earnings, Unum will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.
2. Divide the answer in Item 1 by your indexed monthly earnings.  This is your percentage of lost earnings.
3. Multiply your monthly payment by the answer in Item 2.

This is the amount Unum will pay you each month.

During the first 24 months of disability payments, if your monthly disability earnings exceed 80% of your indexed monthly earnings, Unum will stop sending you payments and your claim will end.

Beyond 24 months of disability payments, if your monthly disability earnings exceed the gross disability payment, Unum will stop sending you payments and your claim will end.

Unum may require you to send proof of your monthly disability earnings at least quarterly.  We will adjust your payment based on your quarterly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records which we believe are necessary to substantiate your income.

LTD-BEN-4   (5/1/2001)

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30 of your payment for each day of disability.

## HOW CAN WE PROTECT YOU IF YOUR DISABILITY EARNINGS FLUCTUATE?

### All Full-Time Employees Earning $50,000 or More

If your disability earnings routinely fluctuate widely from month to month, Unum may average your disability earnings over the most recent 3 months to determine if your claim should continue.

If Unum averages your disability earnings, we will not terminate your claim unless the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings.

We will not pay you for any month during which disability earnings exceed 80% of indexed monthly earnings.

### All Other Employees

If your disability earnings routinely fluctuate widely from month to month, Unum may average your disability earnings over the most recent 3 months to determine if your claim should continue.

If Unum averages your disability earnings, we will not terminate your claim unless:

- During the first 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings; or
- Beyond 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds the gross disability payment.

We will not pay you for any month during which disability earnings exceed the amount allowable under the plan.

## WHAT ARE DEDUCTIBLE SOURCES OF INCOME?

Unum will subtract from your gross disability payment the following deductible sources of income:

1) The amount that you receive or are entitled to receive under:

   - a workers' compensation law.
   - an occupational disease law.
   - any other **act** or **law** with similar intent.

2) The amount that you receive or are entitled to receive as disability income payments under any:

   - state compulsory benefit **act** or **law**.
   - automobile liability insurance policy.
   - other group insurance plan.
   - governmental retirement system as a result of your job with your Employer.

3) The amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under:

- the United States Social Security Act.
- the Canada Pension **Plan**.
- the Quebec Pension Plan.
- any similar plan or act.

4) The amount that you receive as retirement payments or the amount your spouse and children receive as retirement payments because you are receiving retirement payments under:

- the United States Social Security Act.
- the Canada Pension Plan.
- the Quebec Pension Plan.
- any similar plan or act.

5) The amount that you:

- receive as disability payments under your Employer's **retirement plan**.
- voluntarily elect to receive as retirement payments under your Employer's retirement plan.
- receive as retirement payments when you reach the later of age 62 or normal retirement age, as defined in your Employer's retirement plan.

Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefit which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefit under the plan will also be considered as a retirement benefit.

Regardless of how the retirement funds from the retirement plan are distributed, Unum will consider your and your Employer's contributions to be distributed simultaneously throughout your lifetime.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Unum will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6) The amount that you receive under Title 46, United States Code Section 688 (The Jones Act).

7) The amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

With the exception of retirement payments, Unum will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security retirement income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

### WHAT ARE NOT DEDUCTIBLE SOURCES OF INCOME?

Unum will not subtract from your gross disability payment income you receive from, but not limited to, the following:

- 401(k) plans
- profit sharing plans
- thrift plans
- tax sheltered annuities
- stock ownership plans
- non-qualified plans of deferred compensation
- pension plans for partners
- military pension and disability income plans
- credit disability insurance
- franchise disability income plans
- a retirement plan from another Employer
- individual retirement accounts (IRA)
- individual disability income plans
- **salary continuation** or **accumulated sick leave** plans

### WHAT IF SUBTRACTING DEDUCTIBLE SOURCES OF INCOME RESULTS IN A ZERO BENEFIT? (Minimum Benefit)

The minimum monthly payment is the greater of:

- $100; or
- 10% of your gross disability payment.

Unum may apply this amount toward an outstanding overpayment.

### WHAT HAPPENS WHEN YOU RECEIVE A COST OF LIVING INCREASE FROM DEDUCTIBLE SOURCES OF INCOME?

Once Unum has subtracted any deductible source of income from your gross disability payment, Unum will not further reduce your payment due to a cost of living increase from that source.

### WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR DEDUCTIBLE INCOME BENEFITS?

When we determine that you may qualify for benefits under Item(s) 1), 2) and 3) in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amounts if such benefits:

- have not been awarded; and
- have not been denied; or
- have been denied and the denial is being appealed.

Your Long Term Disability payment will NOT be reduced by the estimated amount if you:

- apply for the disability payments under Item(s) 1), 2) and 3) in the deductible sources of income section and appeal your denial to all administrative levels Unum feels are necessary; and

- sign Unum's payment option form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or
- that benefits have been denied and all appeals Unum feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

If you receive a lump sum payment from any deductible sources of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

### HOW LONG WILL UNUM CONTINUE TO SEND YOU PAYMENTS?

Unum will send you a payment each month up to the **maximum period of payment.** Your maximum period of payment is based on your age at disability as follows:

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than age 60 | To age 65, but not less than 5 years |
| Age 60 | 60 months |
| Age 61 | 48 months |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

### WHEN WILL PAYMENTS STOP?

We will stop sending you payments and your claim will end on the earliest of the following:

**All Full-Time Employees Earning $50,000 or More**
- when you are able to work in your regular occupation on a **part-time basis** but you choose not to;
- the end of the maximum period of payment;
- the date you are no longer disabled under the terms of the plan;
- the date you fail to submit proof of continuing disability;
- the date your disability earnings exceed the amount allowable under the plan;
- the date you die.

**All Other Employees**
- during the first 24 months of payments, when you are able to work in your regular occupation on a **part-time basis** but you choose not to;
- after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to;
- the end of the maximum period of payment;

- the date you are no longer disabled under the terms of the plan;
- the date you fail to submit proof of continuing disability;
- the date your disability earnings exceed the amount allowable under the plan;
- the date you die.

## WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?

Disabilities, due to sickness or injury, which are primarily based on **self-reported symptoms**, and disabilities due to **mental illness** have a limited pay period up to 24 months.

Unum will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:

1. If you are confined to a **hospital or institution** at the end of the 24 month period, Unum will continue to send you payments during your confinement.

   If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to Item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Unum will send payments during the length of the reconfinement.

Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Unum will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

## WHAT DISABILITIES ARE NOT COVERED UNDER YOUR PLAN?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries.
- active participation in a riot.
- loss of a professional license, occupational license or certification.
- commission of a crime for which you have been convicted under state or federal law.
- pre-existing condition.

Your plan will not cover a disability due to war, declared or undeclared, or any act of war.

Unum will not pay a benefit for any period of disability during which you are incarcerated.

### WHAT IS A PRE-EXISTING CONDITION?

You have a pre-existing condition if:

- you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; or you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage; and
- the disability begins in the first 12 months after your effective date of coverage.

### WHAT HAPPENS IF YOU RETURN TO WORK FULL TIME AND YOUR DISABILITY OCCURS AGAIN?

If you have a **recurrent disability**, Unum will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under the plan for the period between your prior claim and your recurrent disability; and
- your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of this plan as your prior claim.

Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the policy provisions.

If you become entitled to payments under any other group long term disability plan, you will not be eligible for payments under the Unum plan.

# LONG TERM DISABILITY

# OTHER BENEFIT FEATURES

## WHAT BENEFITS WILL BE PROVIDED TO YOUR FAMILY IF YOU DIE? (Survivor Benefit)

When Unum receives proof that you have died, we will pay your **eligible survivor** a lump sum benefit equal to 3 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and
- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate, unless there is none. In this case, no payment will be made.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

## WHAT INSURANCE IS AVAILABLE IF YOU END EMPLOYMENT? (Conversion)

If you end employment with your Employer, your coverage under the plan will end. You may be eligible to purchase insurance under Unum's group conversion policy. To be eligible, you must have been insured under your Employer's group plan for at least 12 consecutive months. We will consider the amount of time you were insured under the Unum plan and the plan it replaced, if any.

You must apply for insurance under the conversion policy and pay the first quarterly premium within 31 days after the date your employment ends.

Unum will determine the coverage you will have under the conversion policy. The conversion policy may not be the same coverage we offered you under your Employer's group plan.

You are not eligible to apply for coverage under Unum's group conversion policy if:

- you are or become insured under another group long term disability plan within 31 days after your employment ends;
- you are disabled under the terms of the plan;
- you recover from a disability and do not return to work for your Employer;
- you are on a leave of absence; or
- your coverage under the plan ends for any of the following reasons:
  - the plan is cancelled;
  - the plan is changed to exclude the group of employees to which you belong;
  - you are no longer in an eligible group;
  - you end your working career or retire and receive payment from any Employer's retirement plan; or
  - you fail to pay the required premium under this plan.

## DISABILITY PLUS RIDER

### *WHO IS ELIGIBLE FOR DISABILITY PLUS COVERAGE?*

You must be insured under the Unum Long Term Disability (LTD) plan to be eligible for the additional disability coverage described in this Rider. All of the policy definitions apply to the coverage as well as policy provisions specified in this Rider.

### *WHEN WILL THIS COVERAGE BECOME EFFECTIVE?*

You will become insured for Disability Plus coverage on the later of:

- the effective date of this Rider; or
- your effective date under the LTD plan.

Disability Plus coverage will continue as long as the Rider is in effect and you are insured under the LTD plan. There is no conversion privilege feature for Disability Plus coverage.

### *WHEN WILL YOU BE ELIGIBLE TO RECEIVE DISABILITY PLUS BENEFITS?*

We will pay a monthly Disability Plus benefit to you when we receive proof that you are disabled under this rider and are receiving monthly payments under the LTD plan. Disability Plus benefits will begin at the end of the elimination period shown in the LTD plan.

You are disabled under this rider when Unum determines that due to sickness or injury:

- you lose the ability to safely and completely perform 2 **activities of daily living** without another person's assistance or verbal cueing; or
- you have a deterioration or loss in intellectual capacity and need another person's assistance or verbal cueing for your protection or for the protection of others.

### *HOW MUCH WILL UNUM PAY IF YOU ARE DISABLED?*

The Disability Plus benefit is 20% of monthly earnings to a maximum monthly benefit of the lesser of the LTD plan maximum monthly benefit or $5,000.

This benefit is not subject to policy provisions which would otherwise increase or reduce the benefit amount such as Deductible Sources of Income.

### *WHAT EXCLUSIONS AND LIMITATIONS APPLY TO DISABILITY PLUS?*

All of the policy provisions that exclude or limit coverage will apply to this Disability Plus Rider.

For Disability Plus coverage, you will be considered to have a pre-existing condition if:

- you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date under this rider; or you had symptoms for which an ordinarily

prudent person would have consulted a health care provider in the 3 months just prior to your effective date under this rider; and
- the disability begins in the first 12 months after your effective date under this rider.

You will not receive this benefit for a loss resulting from one of the following conditions, if the loss exists on the effective date of your coverage under this rider:

- a loss of the ability to safely and completely perform any activities of daily living without another person's assistance or verbal cueing; and/or
- a deterioration or loss in intellectual capacity and need for another person's assistance or verbal cueing for your protection or for the protection of others.

### WHAT CLAIMS INFORMATION IS NEEDED FOR DISABILITY PLUS?

The LTD claim information section under the policy applies to Disability Plus coverage. We may ask you to be examined, at our expense, by a physician or other medical practitioner of our choice. We may also require an interview with you.

### WHEN WILL DISABILITY PLUS BENEFIT PAYMENTS END?

Benefit payments will end on the earliest of the following dates:

- the date you are no longer disabled under the Rider;
- the date you become ineligible for monthly payments under the LTD plan;
- the end of the maximum period of payment shown in the LTD plan; or
- the date you die.

No survivor benefits are payable for the Disability Plus coverage.

### WHAT IS THE WAIVER OF PREMIUM FOR DISABILITY PLUS?

Premium for the Disability Plus coverage is not required while you are receiving monthly payments under the LTD plan.

## SPOUSE DISABILITY BENEFIT

Only the policy's definitions and sections titled "How Can Statements Made in Your Application For This Coverage Be Used" and "Long Term Disability Claim Information" will apply unless modified below.

### *WHO IS ELIGIBLE FOR THIS BENEFIT?*

A spouse, who is legally married to an employee insured under the policy, is eligible for this benefit.

### *WHO PAYS FOR THIS BENEFIT?*

The cost for this benefit is paid by the Policyholder.

### *WHEN WILL THIS BENEFIT BECOME EFFECTIVE?*

**You** will become insured on the later of:

- the date you become eligible for this benefit; or
- the employee's effective date of insurance under the policy.

**YOU** and **YOUR** means an individual who is eligible for this benefit and whose coverage is in effect.

### *WHEN WILL YOUR COVERAGE END?*

Coverage will end on the earliest of the following dates:

- the date the employee's insurance under the policy terminates;
- the date you are no longer eligible for this benefit;
- the date the policy terminates; or
- the date this benefit terminates.

Termination of this coverage under any conditions will not prejudice any payable claim which occurs while the coverage is inforce.

There is no conversion privilege for this benefit.

### *MONTHLY BENEFIT PAYMENT:*

The monthly benefit payment is $1,000 per month.

### *ELIMINATION PERIOD:*

The elimination period is 60 days during which no benefit is payable.  The elimination period begins on the first day that you meet the benefit eligibility requirements.

### *LIFETIME MAXIMUM PERIOD OF PAYMENT:*

2 years

### WHEN WILL BENEFIT PAYMENTS BEGIN?

Benefits will become payable to you when we receive proof that the benefit eligibility requirements have been met throughout the elimination period. Benefit payments will not be made for any period during which you are outside of the United States, its territories or possessions for longer than 30 days.

### WHAT ARE THE BENEFIT ELIGIBILITY REQUIREMENTS FOR THIS BENEFIT?

In order to meet the benefit eligibility requirements for this benefit, you must be **disabled** and under the regular care of a physician. You will be considered unable to perform an activity of daily living if the task cannot be performed safely without another person's standby assistance or verbal cueing.

**DISABLED** or **DISABILITY** means you are **cognitively impaired** or unable to perform 2 or more **activities of daily living**.

**COGNITIVELY IMPAIRED** means you have a deterioration or loss in intellectual capacity resulting from injury, sickness, advanced age, Alzheimer's disease or similar forms of irreversible dementia and need another person's assistance or verbal cueing for your own protection or for the protection of others.

**ACTIVITIES OF DAILY LIVING** mean:

1. Bathing - washing yourself either in the tub or shower or by sponge bath, with or without equipment or adaptive devices.
2. Dressing - putting on and taking off all garments, and medically necessary braces or artificial limbs usually worn, and fastening or unfastening them.
3. Toileting - getting to and from and on and off the toilet, maintaining a reasonable level of personal hygiene, and caring for clothing.
4. Transferring - moving in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
5. Continence - voluntarily controlling bowel and bladder function; or in the event of incontinence, maintaining a reasonable level of personal hygiene.
6. Eating - getting nourishment into your body by any means once it has been prepared and made available to you.

### WHAT DISABILITIES ARE NOT COVERED FOR THIS BENEFIT?

This benefit is not payable for any disability caused by, contributed to by, or resulting from:

- intentionally self-inflicted injuries;
- active participation in a riot;
- an attempt to commit or commission of a crime under state or federal law;
- commission of a crime for which you have been convicted under state or federal law;
- war, declared or undeclared, or any act of war;
- **mental illness**;
- alcoholism or the voluntary use of any controlled substance (as defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and all amendments) unless prescribed by a physician.

This benefit is also not payable for any disability caused by, contributed to by, or resulting from a **pre-existing condition** which begins in the first 6 months after your effective date.

You will not receive this benefit for a loss resulting from one of the following conditions, if the loss exists on the effective date of your coverage:

- a loss of the ability to safely and completely perform any activities of daily living without another person's assistance or verbal cueing; and/or
- a deterioration or loss in intellectual capacity and need for another person's assistance or verbal cueing for your protection or for the protection of others.

**MENTAL ILLNESS** means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

**PRE-EXISTING CONDITION** is a sickness or injury for which you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 6 months just prior to your effective date; or you had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 6 months just prior to your effective date of coverage.

### WHEN WILL BENEFIT PAYMENTS END?

Payments will end on the earliest of the following dates:

1. the date you no longer meet the benefit eligibility requirements;
2. the end of the maximum period of payment;
3. the date you die.

### WHEN DO WE NEED TO BE NOTIFIED OF A CLAIM?

Written notice of claim should be sent to us within 30 days after the date disability begins. However, written proof of claim must be given to us no later than 90 days after the end of the elimination period. If it isn't possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

### WHAT INFORMATION IS NEEDED AS PROOF OF CLAIM?

The proof, provided at your expense, must show:

1. that you are under the regular care of a physician;
2. the date your disability began;
3. the cause of your disability;
4. the extent of your disability;
5. the name and address of any hospital or institution where you received treatment, including all attending physicians.

As part of proof of claim, we may request that you be examined, at our expense, by a physician or other medical practitioner of our choice. We may also require a claims assessment which is a review to help evaluate the claim. This assessment

may include an interview with you at a location selected by Unum or our designated representative.

Proof of continued disability and regular care of a physician must be given to us within 30 days of the request for the proof.

# STATE REQUIREMENTS

## NOTICE OF INSURANCE CANCELLATION

Florida has some rules regarding an employer's responsibility to give notice to his employees when their group insurance is being terminated.

This notice must be in writing and must be given to the employee as soon as possible before the date insurance terminates.

# OTHER SERVICES

These services are also available from us as part of your Unum Long Term Disability plan.

### HOW CAN UNUM HELP YOUR EMPLOYER IDENTIFY AND PROVIDE WORKSITE MODIFICATION?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Unum.

When this occurs, Unum will reimburse your Employer for the cost of the modification, up to the greater of:

- $1,000; or
- the equivalent of 2 months of your monthly benefit.

This benefit is available to you on a one time only basis.

### HOW CAN UNUM'S REHABILITATION SERVICE HELP YOU RETURN TO WORK?

Unum has a vocational rehabilitation program available to assist you to return to work. This program is offered as a service, and is voluntary on your part and on Unum's part.

In addition to referrals made to the rehabilitation program by our claims paying personnel, you may request to have your claim file reviewed by one of Unum's rehabilitation professionals. As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to gainful employment.

Once the initial review is completed, Unum may elect to offer you a return-to-work program. The return-to-work program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;
- evaluation of adaptive equipment to allow you to return to work;
- vocational evaluation to determine how your disability may impact your employment options;
- job placement services;
- resume preparation;
- job seeking skills training; or
- retraining for a new occupation.

### HOW CAN UNUM'S SOCIAL SECURITY CLAIMANT ADVOCACY PROGRAM ASSIST YOU WITH OBTAINING SOCIAL SECURITY DISABILITY BENEFITS?

In order to be eligible for assistance from Unum's Social Security claimant advocacy program, you must be receiving monthly payments from us. Unum can provide expert advice regarding your claim and assist you with your application or appeal.

Receiving Social Security benefits may enable:

- you to receive Medicare after 24 months of disability payments;
- you to protect your retirement benefits; and
- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;
- obtaining medical and vocational evidence; and
- reimbursing pre-approved case management expenses.

# ERISA

## SUMMARY PLAN DESCRIPTION

**Name of Plan:**
Andrx Corporation

**Policy Number:**
528740  001

**Participants Included:**
Refer to Eligible Group(s) under each plan.

**Name and Address of Employer:**
Andrx Corporation
4955 Orange Drive
Ft Lauderdale, Florida
33314-3902

**Contributions:**
Refer to "Who Pays For The Coverage" under each plan.

**Plan Identification Number:**
a. Employer IRS Identification #:  65-0366879
b. Plan #:  501

**Plan Year Ends:**
December 31

**Plan Administrator, Name,**
**Address, and Telephone Number:**
Andrx Corporation
4955 Orange Drive
Ft Lauderdale, Florida
33314-3902
(954) 321-5246

**Agent for Service of**
**Legal Process on the Plan:**
Andrx Corporation
4955 Orange Drive
Ft Lauderdale, Florida
33314-3902

### *TYPE OF ADMINISTRATION*

Insurer Administration

### *AMENDING THE EMPLOYER'S ERISA PLAN*

The Employer's ERISA plan may be changed in whole or in part by the Employer's company.  Such changes must be in writing and endorsed on or attached to the ERISA plan.

## AMENDING UNUM'S POLICY

The Policy may be changed in whole or in part. The Employer can request a Policy change. Only an officer or registrar of Unum can approve a change. The change must be in writing and endorsed on or attached to the Policy.

NOTE: If you end active employment, see your supervisor to determine what arrangements, if any, may be made to continue your coverage beyond the date you end active employment.

## WHO CAN CANCEL THE POLICY OR A PLAN UNDER THE POLICY?

The policy or a plan under the policy can be cancelled:

- by Unum; or
- by the Policyholder.

Unum may cancel or offer to modify the policy or a plan if:

- there is less than 75% participation of those eligible employees who pay all or part of their premium for a plan; or
- there is less than 100% participation of those eligible employees for a Policyholder paid plan;
- the Policyholder does not promptly provide Unum with information that is reasonably required;
- the Policyholder fails to perform any of its obligations that relate to the policy;
- fewer than 10 employees are insured under a plan;
- the Policyholder fails to pay any premium within the 31 day grace period.

If Unum cancels the policy or a plan for reasons other than the Policyholder's failure to pay premium, a written notice will be delivered to the Policyholder at least 45 days prior to the cancellation date.

If the premium is not paid during the grace period, the policy or plan will terminate automatically at the end of the grace period. The Policyholder is liable for premium for coverage during the grace period. The Policyholder must pay Unum all premium due for the full period each plan is in force.

The Policyholder may cancel the policy or a plan by written notice delivered to Unum at least 31 days prior to the cancellation date. When both the Policyholder and Unum agree, the policy or a plan can be cancelled on an earlier date. If Unum or the Policyholder cancels the policy or a plan, coverage will end at 12:00 midnight on the last day of coverage.

If the policy or a plan is cancelled, the cancellation will not affect a payable claim.

## WHAT ARE YOUR RIGHTS UNDER ERISA?

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

- examine, without charge, at the Plan Administrator's office and at other specified locations, all plan documents including insurance contracts, and copies of all

documents filed by the plan with the U.S. Department of Labor, such as detailed annual reports and plan descriptions;

- obtain copies of all plan documents and other plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies; and
- receive a summary of the plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan.

The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries.

No one, including your Employer, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

If your claim for a benefit is denied, in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have your claim reconsidered.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about your plan, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

## WHAT IF YOUR CLAIM IS DENIED?

In the event that your claim is denied, either in full or in part, Unum will notify you in writing within 90 days after your claim form was filed.  Under special circumstances, Unum is allowed an additional period of not more than 90 days (180 days in total) within which to notify you of its decision.  If such an extension is required, you will receive a written notice from Unum indicating the reason for the delay and the date you may expect a final decision.  Unum's notice of denial shall include:

- the specific reason or reasons for denial with reference to those policy provisions on which the denial is based;
- a description of any additional material or information necessary to complete the claim and of why that material or information is necessary; and
- the steps to be taken if you or your beneficiary wish to have the decision reviewed.

Please note that if Unum does not respond to your claim within the time limits set forth above, you should automatically assume that your claim has been denied and you should begin the appeal process at that time.

## WHAT DO YOU DO TO APPEAL?

If you or your authorized representative appeal a denied claim, it must be submitted within 90 days after you receive Unum's notice of denial.  You have the right to:

- submit a request for review, in writing, to Unum;
- review pertinent documents; and
- submit issues and comments in writing to Unum.

Unum will make a full and fair review of the claim and may require additional documents as it deems necessary or desirable in making such a review.  A final decision on the review shall be made not later than 90 days following receipt of the written request for review.  If special circumstances require an extension of time for processing, you will be notified of the reasons for the extension, and a decision shall be made not later than 120 days following receipt of the request for review.  The final decision on review shall be furnished in writing and shall include the reasons for the decision with reference, again, to those policy provisions upon which the final decision is based.

ERISA-4   (5/1/2001)

# GLOSSARY

**ACTIVE EMPLOYMENT** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

Your work site must be:

- your Employer's usual place of business;
- an alternative work site at the direction of your Employer, including your home; or
- a location to which your job requires you to travel.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

**ACTIVITIES OF DAILY LIVING** mean:

- Bathing - the ability to wash yourself either in the tub or shower or by sponge bath with or without equipment or adaptive devices.
- Dressing - the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn.
- Toileting - the ability to get to and from and on and off the toilet, to maintain a reasonable level of personal hygiene, and to care for clothing.
- Transferring - the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
- Continence - the ability to either:
  - voluntarily control bowel and bladder function; or
  - if incontinent, be able to maintain a reasonable level of personal hygiene.
- Eating - the ability to get nourishment into the body.

**DEDUCTIBLE SOURCES OF INCOME** means income from deductible sources listed in the plan which you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

**DISABILITY EARNINGS** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your **maximum capacity**.

**ELIMINATION PERIOD** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum.

**EMPLOYEE** means a citizen or permanent resident of the United States or Canada who is in active employment in the United States with the Employer unless an exception is applied for and approved in writing by Unum.

**EMPLOYER** means the Policyholder, and includes any division, subsidiary or affiliated company named in the policy.

**EVIDENCE OF INSURABILITY** means a statement of your medical history which Unum will use to determine if you are approved for coverage. Evidence of insurability will be at Unum's expense.

**All Other Employees**
**GAINFUL OCCUPATION** means an occupation that is or can be expected to provide you with an income at least equal to your gross disability payment within 12 months of your return to work.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made.

**GROSS DISABILITY PAYMENT** means the benefit amount before Unum subtracts deductible sources of income and disability earnings.

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

**INDEXED MONTHLY EARNINGS** means your monthly earnings adjusted on each anniversary of benefit payments by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Unum reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

**INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause. Disability must begin while you are covered under the plan.

**INSURED** means any person covered under a plan.

**LAW, PLAN OR ACT** means the original enactments of the law, plan or act and all amendments.

**LAYOFF** or **LEAVE OF ABSENCE** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer.

Your normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**LIMITED** means what you cannot or are unable to do.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**All Full-Time Employees Earning $50,000 or More**
**MAXIMUM CAPACITY** means, based on your restrictions and limitations, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.



March 27, 2002

LISA G. KAHANE
19905 NW 10TH STREET
PEMBROKE PINES, FL 33029-3373

RE:    Lisa G. Kahane          DOB: May 15, 1959
       Claim Number:          0098989903
       Policy Number:         00528740 - 0005
       Tax ID:                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

Dear Ms. Kahane:

We are writing to you regarding the status of your disability claim.

Your Long Term Disability (LTD) claim has been thoroughly reviewed and approved.

The policy under which we are providing benefits has a limitation that is described in the following policy provision:

Disabilities, due to a sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 24 months.

UNUM will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:

1.  If you are confined to a hospital or institution at the end of the 24 month period, UNUM will continue to send you payments during your confinement.

    If you are still disabled when you are discharged, UNUM will send you payments for a recovery period of up to 90 days.

    If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, UNUM will send payments during that additional confinement and for one additional recovery period up to 90 more days.

UNUMPROVIDENT
Regional Benefits Office
P.O. Box 12030
Chattanooga, Tennessee 37401-3030
Toll Free 1-800-633-7479
Fax 423-755-3000

Claimant Name:      Lisa G. Kahane
Claim Number:       0098989903

Page: 2

We will contact you once we have made a decision. In the meantime, please contact me at (800)633-7479 ext. 8301 with any questions you may have about this or any other aspect of your disability claim.

Sincerely,

*Beth Sanderson*

Beth B. Sanderson
Customer Care Specialist

BBS/bbs

cc:     ANDRX CORPORATION



March 31, 2004

Original Recipient

LISA G KAHANE
19905 NW 10TH STREET
PEMBROKE PINES, FL 33029-3373

ANDRX ANDRX CORPORATION
BENEFITS/PERSONAL &
CONFIDENTIAL
4955 ORANGE DR
FORT LAUDERDALE, FL 33314

RE:    Kahane, Lisa G                        DOB: May 15, 1959
       Claim Number:                         1117435
       Policy Number:                        525740

Dear Sir or Madam:

We are writing regarding the disability claim for Lisa G Kahane.  This letter copy has been
amended to remove confidential information.

We have completed our review of your claim for Long Term Disability benefits.

The above number policy states:

### "HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular
  occupation due to your sickness or injury, and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or
  injury.

After 24 months of payments, you are disabled when Unum determines that due to the same
sickness or injury, you are unable to perform the duties of any gainful occupation for which you
are reasonably fitted by education, training or experience."

As you are aware the policy under which we have been providing benefits has a limitation that
states:

### "WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?

Claimant Name: Kahane, Lise G                                                    March 31, 2004
Claim Number: 1117435                                                            Page 2 of 5

Disabilities, due to a sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness, alcoholism or drug abuse have a limited pay period up to 24 months.

Unum will continue to send you payments based beyond the 24 month period if you meet one or both of these conditions:

1. If you are confined to a hospital or institution at the end of the 24 month period, Unum will continue to send you payments during your confinement.

   If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to Item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Unum will send payments during the length of the reconfinement.

   Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

   Unum will not apply the mental illness limitation to dementia if it is a result of:

   - stroke;
   - trauma;
   - viral infection;
   - Alzheimer's disease; or
   - other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

"SELF-REPORTED SYMPTOMS means the manifestations of your condition which you tell your doctor, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy."

"MENTAL ILLNESS means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

"HOSPITAL OR INSTITUTION means an accredited facility licensed to provide care and treatment for the condition causing your disability."

1242-05

Claimant Name: Kahane, Lisa G
Claim Number: 1117450

March 31, 2004
Page 1 of 5

You were contacted on March 27, 2002 by a Disability Benefits Specialist regarding your Long Term Disability benefit approval. During that conversation it was explained to you that your benefits were being approved under the above 24 month limitation. Your benefits were approved under this limitation as there was no further support for restrictions or limitations related to the diagnosis of Vertigo, Crohns, Fibromyalgia, or Irritable Bowel Disorder. It was determined at that time that your condition is to some degree if not entirely related to a psychiatric condition, therefore you would only be eligible for 24 months of benefits. Based on the benefit begin date of August 16, 2001, the 24 month limitation ended on August 15, 2003

A review of the available records from your treating physicians done April 8, 2003 concluded that the severity of your physical conditions was determined by psychological factors. So although there are physical symptoms and labels of functional syndromes, your impairment is promoted and maintained by the psychological issues and resultant deconditioning.

On August 1, 2003 a letter was sent to your attention advising you that we were going to review the available medical documentation for consideration of benefits beyond 24 months. According to telephone documentation on August 1  2003 you were contacted regarding our continued evaluation of your benefits, and at which time it was agreed that providing updated proof of disability to our office for review is ultimately your responsibility.

We received and review medical documentation from Dr. Soff  Dr. Green, Dr. Dreilinger, and Dr. Ropos.

The medical records from Dr. Soff indicate that on January 14, 2003 you reported that you were unable to move secondary to polyarthritis and Fibromyalgia. You reported irritable bowel syndrome with diarrhea three times per week.

During a Rheumatological consult on August 11, 2003 with Dr. Ropos it was noted that you reported the following:

- Joint symptoms began in 2001 after being treated with IV Remicade for Crohn's.
- Continued diffuse pain and stiffness intermittent in nature with episodes of joint swelling
- She reports a low grade temperature and overall fatigue with exhaustion.
- She also reports severe vertigo and problems with balance and lightheadedness.
- She reports her ENG was not normal.

The records go on to document that an exam of your shoulders  elbows, knees, wrists, ankles and MCP/MTP's showed no synovitis.  Dr. Ropos indicates that you did have diffuse tender points over the anterior/posterior thorax, lower extremities, buttocks and quadriceps. These records document that lab work was ordered to determine a diagnosis of inflammatory arthritis.

A follow up office visit with Dr. Ropos on September 18, 2003 documents that X-rays of your hands and ankles were unremarkable, there was no evidence of inflammatory markers (your sedimentation rate was normal), you do have some minor disk space narrowing at L5-S1, and recommendations of exercise were noted.  It was also recommended that you follow up with Gastroenterology, Psychiatry and Pain Management.  The identified restrictions and limitations at this time included: No weight lifting more than 10 lbs  No prolonged standing.

Given these restrictions and limitations it would not appear that you would be limited from performing your regular occupation of Sales-Telemarketing.

On January 22, 2004 we spoke with you and we were in agreement that you have refused to take your medications prescribed to you for depression, no follow-ups were done with regards to the recommended treatment from Dr. Ropos, you had not been treated by Dr. Soff since September 2003, and that you do not agree with Dr. Ropos' restrictions and limitations. It is stated that you were advised of the lack of medical documentation to consider issuing further benefits, but that you would have 30 days to provide our office with the information needed for review, and that any benefits being issued to you after this date were done so under reservation of rights. A letter was sent to you on this day confirming this telephone conversation for your records.

An office visit with Dr. **Soff** on January 30, 2004 documents your complaints of pain in your arms, legs and spine. Documentation from this office visit indicates that Crohns was stable and that Psychiatric and Pain Management were noted, even though you had previously denied to us any follow-up with Pain Management.

Dr. Green completed a mental status questionnaire on February 9, 2004 and stated that you have severe levels of depression and anxiety. The questionnaire indicates you are extremely distractible and unable to concentrate longer than 2 minutes, you are emotionally labile and for these reasons you are unable to work in any capacity in the foreseeable future.

The only restrictions and limitations provided to our office are as follows:

- Dr. Soff notes that you should not drive, stand, bend, keyboard or do housework. The doctor noted your lifting should be limited to 2-3 pounds.
- Dr. Ropos notes that you should not lift more than ten pounds and should not stand for prolonged periods of time.
- Dr. Green notes that you are unable to work in any capacity in the foreseeable future.

According to the documentation in your file the restrictions and limitations placed on you by Dr. Green, Dr. Soff, and Dr. Ropos appear to be based on your self reported symptoms and/or mental/nervous conditions. The records document that a Functional Capacities Evaluation was recommended, however the findings of this evaluation were not presented by your physician's for review.

According to the medical records provided to our office it appears as though you did not seek medical treatment from September 18, 2003 through January 30, 2004, this is not consistent with your reported level of impairment.

After our complete review of the updated medical documentation, it does not appear that there is any objective medical documentation that would support the continuation of disability benefits beyond the policy's 24 month limitation. The restrictions and limitations appear to be based solely on your reports of pain and discomfort and/or psychological conditions (mental/nervous). Therefore it is our conclusion that you would not meet the policy requirements for benefits to be provided to you beyond the 24 month self-reported/mental illness limitation.

We advised you on January 21, 2004 that benefits going forward were being issued under reservation of rights. After completing our review of your claim for continuing impairment, we have determined that benefits paid to you from August 15, 2003 through March 15, 2004 should not have been issued, as the medical records do not support your claim beyond the 24 month limitation. Since you were not notified until January 21, 2004 that benefits were being issued to

1242-03

you under reservation of rights we are not going request reimbursement of monies paid to you from August 16, 2003 through January 20, 2004. We are however, requesting reimbursement of benefits paid to you from January 21, 2004 through March 15, 2004 totaling $1,906.67. Please remit payment in the amount of $1,906.67 to our office within the next 30 days. Please make your check payable to Unum Life Insurance Company of America and return in the enclosed envelope.

If you have additional information to support your request for disability benefits, it must be sent to my attention for further review at the address noted on this letterhead, within 90 days of the date of this letter.

However, if you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This appeal must be received by us within 90 days of the date of this letter. Your written appeal should include your comments and views of the issues, as well as any new documentation you may wish us to consider. You may also request copies of documents contained in your claim file, which were pertinent to the denial decision. You should submit your written appeal to the following address:

UnumProvident
The Benefits Center
Quality Performance Support Unit—1 North
PO Box 180136
Chattanooga, TN 37401-3030

If we do not receive your written appeal within 90 days of the date of this letter, our claim determination will be final.

We have not evaluated your claim with respect to any policy provisions other than those discussed above. The Company reserves its right to enforce all provisions of the policy.

Should you have any questions, please feel free to contact me at 1-800-633-7479.

Sincerely,

*Thaddeus Lockhart*

Thaddeus Lockhart
Disability Benefits Specialist
Unum Life Insurance Company of America

1042-03

Wednesday, April 07, 2004

Unum-Provident
The Benefits Center
Quality Performance Support Unit-1 North
PO Box 180136
Chattanooga, TN 37401-3030

To Whom It May Concern:

I am writing to you in regard to Claim Number 1117435, Policy Number 528740. You
have informed me that you are terminating my claim, and I wish to file an appeal. There
are some erroneous allegations on your part, which I would like to straighten out. Today I
went to Dr. Soff, who as you know is my primary care physician as well as my
gastroenterologist. You have maintained that my claim was based on "self-reported"
symptoms. This is not now, and has never been, the case. I have had Crohn's disease
since 1983. Numerous attacks, as well as treatments (including a multitude of
immunosuppressants), have weakened my immune system to such an extent that I am
now suffering from an abundance of medical problems. These include agonizing
myofascial pain syndrome, edema, fever, fibromyalgia, and severe depression. Dr. Soff
explained to me today that the reason these problems are so hard to treat is that they are
of immunologic origin, and like many of these diseases, do not show up in blood work.
This disease mimics severe arthritis, but won't increase a sedimentation rate or show up
on an X-ray. Nevertheless, it doesn't make me any less ill. I am anxious and depressed
due to all my physical problems, especially my inability to work much less function as a
normal human being, and my ensuing destitution. Dr. Soff said that you disregarded
everything he put in his report to you, that I should seek legal counsel, and that he will
testify on my behalf in a court of law. Dr. Green, my psychologist (who I went to see
because one of your "customer care specialists" requested it), also realizes that I have a
very limited level of functioning, and has agreed as well to testify for me. Both of my
doctors in addition to my attorney have told me that UNUM purposely classifies their
policyholders as either "mentally disabled" (i.e. depression) or having "self-reported"
symptoms so that they do not have to pay past a 24-month period. You have deliberately
pigeonholed me into this category in order to cancel my benefits.

The next misconception is regarding my pain management, which was being handled by
both Drs. Dreilinger and Soff. The only reason that I was not on antidepressant
medication for a short time was because I had to let one be eliminated by my body before
any others could be added. It was never my intention to stop the antidepressants; I do not
like feeling suicidal. Also, they were thinking of using Duragesic (a patch), but then I
wouldn't have any level of mental functioning. Plus, there is a risk of death because of
the huge amount of medication that I am on.

Another misconception is that I didn't go to the doctor between September 2003 and
January 2004. That is totally untrue. I had appointments with Dr. Green every 2 weeks or
so, and Dr. Dreilinger once a month for pain management. It was at this time that I had to

eliminate certain medications from my body before being given any others. During this time I was also under going extensive periodontal surgery and restoration on my teeth, which have been destroyed by my immune system. You never informed me that I had to be at the doctor a certain number of times during a given period. I was just following my doctors' instructions. Considering that I can't drive and have to rely on others to take me, I think I have done quite decently as far as seeing my physicians.

Instead of treating me like a human being, your agents harassed and victimized me. If you want examples, first there was Thomas Scarpelli and then Bruce Olsen. They were unkind, uncaring, unsympathetic and unprofessional. Mr. Olsen was extremely nasty to me. I have been shuffled around to so many different customer care specialists that it is no wonder all these allegations have been made. One specialist said one thing, and then another would take over my case and totally twist everything around. I wish your specialists could spend one day living my life just to see how miserable I am. I don't choose voluntarily not to work or have a life; this is the most humiliating form of torment and pain that I have ever experienced.

I hope that this issue can be resolved without having to resort to using attorneys. I don't wish to sue you. However, my attorney as well as all my doctors will have no trouble supporting me in regard to this appeal. They have all said that they will **not** allow you to further victimize me. In addition, you are trying to seek restitution for right of reservation payments. The only income I had was what you were sending me. I am now destitute and have nothing, so I won't be able to repay you. If I ever have any money in the future, then it will be a different story, but in the meantime you need to stop harassing me.

Kindly let me know about this appeal letter so that I may discuss further action with my attorney. I really hope that we can reach an amicable resolution.

Very truly yours,

Lisa Kahane

LK/js



June 24, 2004


LISA G KAHANE
19905 NW 10TH STREET
PEMBROKE PINES, FL 33029-3373




RE:   Kahane, Lisa G.          DOB: May 15, 1959
      Claim Number:            1117435
      Policy Number:           528740


Dear Ms. Kahane:

We are writing to let you know that we have completed the appeal review of the denial of benefits on your Long Term Disability (LTD) claim.  We have determined that the original decision to deny your claim was appropriate.

Your LTD policy states:

### "HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

Your LTD policy further states:

### "WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?

FROM : Lisa Kahane

Case 0:05-cv-60101-FAM   Document 1   Entered on FLSD Docket 01/21/2005   Page 57 of 60
FAX NO. 957 5162                      Jun. 28 2004 02:45PM   P1

Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms and disabilities due to mental illness have a limited pay period up to 24 months.

Unum will continue to send you payments beyond the 24 month period if you meet one or both of these conditions:

1. If you are confined to a hospital or institution at the end of the 24 month period, Unum will continue to send you payments during your confinement.

   If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Unum will send payments during the length of reconfinement.

Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Unum will not apply the mental illness limitation to demenia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

Your policy also states:

"**MENTAL ILLNESS** means a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment."

"**SELF REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy."

1242-03

Claimant Name: Kahane, Lisa G
Claim Number: 1117435

June 24, 2004
Page 3 of 4

Your file reflects that you went out of work on 5/18/01 due to Crohn's disease and vertigo.
Benefits began on 8/17/01 under your LTD policy. You were notified via letter on 9/28/01 that
your benefits were being paid while a final determination was being made with regard to your
eligibility for benefits. On 3/22/02, a letter was sent to you indicating that your disability was
subject to the 24 month limitation regarding disabilities due to mental illness and self reported
symptoms.

Our on-site physician reviewed all of the medical information in your file on appeal. Our doctor
noted that it has been maintained that your symptoms are due to administration of Remicade on
several occasions in the past and a serum sickness reaction and drug-induced lupus have been
mentioned. According to our physician, both of these conditions can be caused by Remicade,
however, they are transient and resolve after cessation of the causative medications. Our
physician indicated that your past experience with Remicade would not cause your present
problems. Our doctor further indicated that it is noted that serum sickness is associated with
arthralgias (joint pains) but not arthritis (observable inflammation of joints) as you have reported.
It was noted by our physician that you had reported joint pains prior to the use of Remicade or
flare of Crohn's disease that prompted the Remicade treatment. Arthritis and arthralgias are
recognized complications of Crohn's disease, but the joint symptoms and findings parallel the
activity of the Crohn's and there is no current evidence of active disease according to our
physician.

You indicated in a correspondence dated 7/13/03, that your joints were usually 3 times their
normal size. Our physician noted that your examination in 8/03 did not disclose any bone
abnormality and there was no report of soft tissue swelling on x-ray of your foot, left hand, or
both knees. Your office visit with Dr. Trumane Ropos (rheumatology) dated 8/11/03 stated in
part, "Exam of the shoulders, elbows, wrists and MCP's showed no synovitis. She had diffuse
tender trigger points over the anterior/posterior thorax, as well as lower extremities, buttocks
and quads. There was no synovitis of the knees, ankles, or MTP's although she had +1 pedal
edema…" Dr. Ropos' 8/11/03 evaluation further stated, "Assessment and Plan: History of
Crohn's disease. However, the question at present now is whether or not she truly does have an
inflammatory arthritis due to her inflammatory bowel disease or truly fibromyalgia and/or a
severe depression and somatization disorder or myofascial pain syndrome. At present, I need
to be as objective as I can, and I did stress to her that I will order some labs looking for acute
phase reactants being elevated, as well as x-rays. If these are unremarkable, I would have to
defer her to a psychiatrist and gastroenterologist…" The office visit note from West Broward
Gastroenterology and Internal medicine dated 1/30/04 noted, "Crohn's – no recent symptoms."

Our physician noted that the medical records do not document objective findings of conditions
that would cause your reported symptoms and loss of capacity. Though joint pain is described,
our physician indicated there are no findings of active arthritis on either physical or x-ray
examination. Blood tests were not consistent with an active inflammatory condition according to
our doctor. Fatigue and severe myalgias have also been reported, but our physician noted that
there are no objective findings that support these symptoms. Shortness of breath and
palpitations have been reported, but there is no documentation of physical exam or chest x-ray
abnormalities, pulmonary function testing or pulmonary or cardiac consultation that would be
expected for reports of significant shortness of breath according to our medical staff. It was
further noted by our physician that there is no documentation of active Crohn's disease. You
have noted migraine headaches and gastro esophageal reflux but these do not rise to levels
that would be considered impairing and preclude return to work according to our physician. Our

1242-03

Claimant Name: Kahane, Lisa G                                      June 24, 2004
Claim Number: 1117435                                                Page 4 of 4

physician further noted that difficulty with concentration has been reported, but there is no documentation of a formal mental status exam or neuropsychological testing.

Based upon a review of the medical information in your file, our physician concluded that there is no documentation of findings that would support the presence of a physical condition of sufficient severity to cause impairment and preclude return to work or preclude full time capacity. Our physician also noted that the information in file does not support restrictions and limitations due to a physical condition.

You have indicated in your letter of appeal that you have had Crohn's disease since 1983. While you may have this diagnosis, the medical records do not support restrictions and limitations from that condition to support your claim beyond 3/15/04.

As the medical information in your file does not support a disability based upon a physical condition which can be verified using tests, procedures, or clinical examination standardly accepted in the practice of medicine, your claims of impairment are due to self-reported symptoms. As you are aware, your policy has a 24 month limitation on disabilities which are due to mental illness or self-reported symptoms. You have been paid at least 24 months of benefits under your LTD policy for your psychiatric condition and self-reported symptoms of fatigue, pain and dizziness. As you have received the maximum duration of payment for a disability due to mental and nervous and self-reported symptoms, no further benefits are payable. Therefore, we must uphold the prior denial determination.

Your file reflects that you were advised via telephone on 1/21/04 that benefits paid to you from that date forward were being issued under reservation of rights. On 1/22/04 you were sent a letter by Disability Benefit Consultant, Bruce Olsen noting that payments would be made to you pending the investigation of your continued eligibility for benefits; however those payments could not be construed as an admission of present or future liability. This letter also stated that we had reserved our right to enforce any and all provisions of the policy, and to claim repayment of benefits that were made to you in the event it was determined that you claim was not compensable. A letter to you from Disability Benefits Specialist, Thaddeus Lockhart, dated 3/31/04 noted that the benefits had been paid to you under reservation of rights from 1/21/04 through 3/15/04 totaling $1906.67. As your claim was found to be non compensable, reimbursement of benefits issued from 1/21/04 through 3/15/04 was requested. At this time, your file is being returned to Thaddeus Lockhart for handling of the overpayment.

Ms. Kahane, if you have any questions, please feel free to contact me at 1-800-413-7670.

Sincerely,

*Beth Coolbroth ALHC*

Beth Coolbroth ALHC
Senior Appeals Specialist
Unum Life Insurance Company of America

1242-03

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**    05-60101 CIV-MORENO    MAGISTRATE JUDGE
GARBER
Lisa Rahane

DEFENDANTS
Unum Life Insurance Company
of America

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Broward County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Harnett Lesnick & Ripps P.A.

ATTORNEYS (IF KNOWN)
05CV60101

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  (BROWARD),  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)    AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 443 Housing/Accommodations | A☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | | B☐ 550 Civil Rights | | | A OR B |
| ☐ 290 All Other Real Property | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Cause of Action arises under long term disability policy constituting an employee welfare benefit plan under § 302 (i) of the Employee Retirement and Insurance Security Act.
LENGTH OF TRIAL via 3 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S)
IF ANY    (See instructions):
JUDGE
DOCKET NUMBER

DATE  1/19/05
SIGNATURE OF ATTORNEY OF RECORD  Judith A. Ripps

FOR OFFICE USE ONLY
RECEIPT #  5330 26150 00    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE